In the Matter of MITCHELL L. KAPHAN, Petitioner, v BARBARA DEBUONO, as Commissioner of Health of New York State, et al., Respondents. [702 NYS2d 438] —Graffeo, J. Proceeding pursuant to CPLR article 78 (initiated in this Court pursu-

ant to Public Health Law § 230-c [5]) to review a determination of respondent Administrative Review Board for Professional Medical Conduct which, *inter alia*, revoked petitioner's license to practice medicine in New York.

Petitioner, an orthopedic surgeon who has been practicing for 20 years, commenced this CPLR article 78 proceeding to challenge the determination of respondent Administrative Review Board for Professional Medical Conduct (hereinafter the ARB) which revoked petitioner's license to practice medicine. The Bureau of Professional Medical Conduct charged petitioner with 11 violations of Education Law § 6530 (3), (4), (5), (6) and (35) alleging negligence, incompetence, gross negligence, gross incompetence and unwarranted treatment relating to three wrong-site surgeries performed during an eight-year period.

The first surgical incident, which occurred in April 1987, involved a patient who was diagnosed in the emergency room with a fracture of the right hip but was subjected to surgery on her left hip after petitioner failed to order confirmatory X rays. Upon discovering his error, petitioner closed the incision and proceeded to operate on the patient's fractured right hip. In February 1992 petitioner was scheduled to perform arthroscopic surgery to a patient's left knee but operated on the right knee after the surgical nursing staff mistakenly prepped the wrong site. Despite realizing that he entered the wrong knee, petitioner nevertheless corrected damage which allegedly existed in that knee. In the third surgical episode in December 1995, a patient's X rays revealed an injury to the right hip but petitioner decided the fracture was actually in the left hip after examining the patient and speaking to his son. Presuming that the X ray must have been mislabeled, petitioner performed surgery on the left hip without consent.

As a result of the professional misconduct charges, the Hearing Committee of the State Board of Professional Medical Conduct conducted a hearing in June 1998 and concluded that petitioner had failed to follow accepted medical procedures and was negligent in his treatment of the three patients, grossly negligent in his treatment of the patient who was the subject of the December 1995 surgery, incompetent on more than one occasion with respect to the February 1992 and December 1995 incidents, and performed unwarranted treatment of the patient operated on in February 1992. A penalty of a one-year stayed suspension and five years' probation with presurgical monitoring was imposed and thereafter both parties sought review by the ARB. The ARB sustained the Hearing Committee's find-

ings and determinations in their entirety but found license revocation to be the appropriate penalty due to the seriousness of petitioner's errors, his failure to take responsibility for his mistakes and his failure to rectify his professional behavior despite previous warnings concerning wrong-site surgeries. Petitioner now seeks to annul that determination.

It is well established that with respect to a CPLR article 78 proceeding, this Court cannot overturn an administrative tribunal's determination unless it was "arbitrary and capricious, affected by an error of law or an abuse of discretion" (*Matter of Brown v New York State Dept. of Health*, 235 AD2d 957, 957-958, *lv denied* 89 NY2d 814; *see, Matter of Shafer v Board of Regents*, 243 AD2d 838, 840, *cert denied* 525 US 948; *Matter of Sparaxis v State Bd. for Professional Med. Conduct*, 205 AD2d 940, 942, *lv denied* 84 NY2d 807). Here, the ARB found that petitioner was negligent with respect to all three patients, grossly negligent in performing the December 1995 surgery, and incompetent concerning the April 1987 and February 1992 surgeries based on the expert testimony and evidence adduced at the hearing. Furthermore, it is evident from the record that petitioner was issued prior warnings, including one from the Office for Professional Medical Conduct, after the first two surgical incidents regarding his failure to conduct presurgical examinations and to consider medical records and the opinions of other physicians. Under these circumstances, and according deference to the fact finder's credibility determinations (*see, Matter of Moss v Chassin*, 209 AD2d 889, 891, *lv denied* 85 NY2d 805, *cert denied* 516 US 861) and the weight afforded to the expert testimony (*see, Matter of Chua v Chassin*, 215 AD2d 953, 955, *lv denied* 86 NY2d 708), we find that the ARB's determination was supported by substantial evidence.

Next, petitioner asserts that the ARB improperly refused to consider mitigating evidence in the nature of testimony relating to the professional reputation of the X-ray technician who was involved in the hip surgeries and erroneously construed petitioner's attempt to utilize mitigating factors as a denial of wrongdoing. Respondents counter that the ARB's decision was appropriate in that a surgeon bears the ultimate responsibility for the surgical procedures he or she performs. In furtherance of this proposition, respondents submitted expert testimony contending that standard medical practice requires a surgeon to perform adequate presurgical examinations, including confirming a diagnosis with new X rays if inconsistencies are present prior to conducting surgery. In our view, the issue

raised by petitioner regarding the X-ray technician's competency would not have absolved him of his professional responsibility for the two wrong-site hip surgeries. Hence, our review of the record reveals that petitioner has not demonstrated any action on behalf of the ARB of such a "prejudicial impact so as to permeate or affect the determination rendered" (*Matter of Moore v State Bd. for Professional Med. Conduct*, 258 AD2d 837, 845).

Petitioner also contends that the ARB's penalty of license revocation was unduly harsh and excessive in light of his overall surgical performance during the course of the eight years at issue. In reviewing the propriety of physician discipline, appellate courts may intervene where a penalty is found to be "overly harsh and excessive in comparison to the gravity of the proven charges" (*Matter of Krasowski v State Educ. Dept.*, 132 AD2d 120, 123, *appeal dismissed* 71 NY2d 890). The ARB found that petitioner's misconduct placed his patients at risk and demonstrated an indifference to their well-being, paired with a failure to remedy his practices after reprimand. It further concluded that the appropriate penalty was to revoke petitioner's license in its entirety because his deficiencies impaired his ability to practice medicine in general.

In light of the gravity of petitioner's conduct, we do not consider the penalty imposed by the ARB to be so incommensurate with the offenses as to shock one's sense of fairness (*see, Matter of Pisnanont v New York State Bd. for Professional Med. Conduct*, 266 AD2d 592, 594; *Matter of Moran v Chassin*, 225 AD2d 814, 815, *lv denied* 88 NY2d 807; *Matter of Hirose v Sobol*, 167 AD2d 570), as it was rationally based on the evidence presented. We will, therefore, not disturb the penalty imposed upon petitioner (*see, Matter of Gupta v DeBuono*, 229 AD2d 58).

We have reviewed petitioner's remaining contentions and find them to be without merit.

Cardona, P. J., Crew III, Peters and Spain, JJ., concur. Adjudged that the determination is confirmed, without costs, and petition dismissed.